UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAULO TRINDADE | : | Civil Action No. 1:19-cv-10717-ADB |
| Plaintiff, | : | |
| v. | : | MEMORANDUM OF LAW IN OPPOSITION TO SECOND MOTION TO COMPEL DOCUMENT PRODUCTION |
| GROVE SERVICES, INC. and VICTOR SPIVAK | : | |
| Defendants. | : | |

Following this Court's order on July 23, 2020, defendant Grove Services, Inc. ("Grove") produced 160 pages of ledgers reflecting approximately 9,000 entries that make up Grove's corporate overhead component of the commission calculation in dispute, 623 pages of supporting "source documents," consisting of credit card statements, bank statements and numerous invoices, as well as the other documents that the Court ordered Grove to produce. In addition, Grove provided redacted compensation information included in Grove's overhead, offered un-redacted copies on an attorneys-eyes only basis, and offered to meet and confer and produce additional supporting material as identified in the expense ledgers as reasonably identified by plaintiff's counsel, which he declined to do.

Instead, through Plaintiff's Further Motion To Compel And For Sanctions [Docket No. 52] (the "Second Motion To Compel"), plaintiff Paulo Trindade ("Trindade") seeks to enlist the Court in requiring Grove to produce all supporting material for the expense ledgers, literally every scrap of expense documentation in Grove's files, and to produce documents that were not the subject of any document request served by Trindade, thus

1

are being sought for the first time in the Second Motion to Compel.  Trindade provides no explanation as to what additional information he believes will be contained in the requested copies of 9,000 invoices and receipts for Grove's expenses, most of which are reflected in the credit card and bank statements that have already been produced, or why the proportional burden on Grove to find and produce those duplicative materials from Grove's archives is justified by an expected evidentiary benefit.  Nor does Trindade explain why he needs every document underlying Grove's gross profit for 2015, which were never requested in his document requests.  Instead of waiting to complete the deposition of Grove's Rule 30(b)(6) accounting witness to determine the relevance of any of these additional materials, Trindade has run to court to compel production of materials to bludgeon Grove with additional discovery and the Second Motion to Compel should be denied.

## Background

On or about September 24, 2010, Trindade entered into an employment agreement (the "Agreement") with Grove to be Grove's Sales Director for Latin America. (Declaration of Irwin B. Schwartz In Opposition To Motion To Compel ("Schwartz Decl.") Ex. A (Agreement); Amended Complaint [Docket No. 42] ¶¶ 5-6).  Under his employment contract with Grove, Trindade was entitled to a commission "equal to fifteen percent of the Net Profits attributable to [sales generated and managed by Trindade] to the extent such Net Profits exceed US$150,000 in the aggregate in any calendar year."  (Agreement § 4(d)(i)).  The term Net Profits is defined as the gross amount of sales generated by Trindade, minus deductions for costs of goods sold, corporate overhead, and working capital:

(ii) For purposes hereof, "Net Profits" shall be calculated by the Company

2

for the relevant calendar year as follows: (a) the gross sales order amounts generated and managed by you (tracked by the Company under your employee number), <u>minus</u>, (b) the actual costs of goods sold attributable to such sales orders, <u>minus</u> (c) all transportation and freight charges relating to the transportation of product and all storage charges, demurrage charges, insurance and other costs and expenses directly relating to such sales orders, <u>minus</u> (d) a proportionate amount of the salary, bonus, benefits and other compensation paid to or on behalf of employees and consultants, including you, working out of or for the Company's Atlanta office, <u>minus</u> (e) proportionate amount of the overhead, costs and expenses of the Company's Atlanta office and a proportionate amount of the overhead, costs and expenses of the Company reasonably apportioned to the Company's Atlanta office, <u>minus</u> (f) a proportionate amount of all interest expenses (internal or external) calculated as a function of the working capital needs of the Company's Atlanta office, and <u>minus</u> (g) a proportionate amount of a fifteen percent (15%) return on the capital investment of the Company in its Atlanta office.

(Agreement § 4(d)(ii) (emphasis in original)).  The Agreement gives Grove the right to classify all costs and calculate proportionate amounts based on any reasonable allocation method:

> All classifications of costs shall be made by the Company and all calculations of proportionate amounts of such costs shall be made by the Company in accordance with any reasonable allocation method selected by the Company.

(Agreement § 4(d)(iii)).

On April 15, 2019, Trindade filed his initial complaint against Grove, alleging that Grove did not pay him the full amount of commission that he was owed for the 2015 year.  (Complaint [Docket No. 1] at 9, 12-25). On August 1, 2019, Trindade served his first request for the production of documents.  (Schwartz Decl. Ex. B ("First Document Requests")). Grove responded by providing data from its accounting system used to calculate Trindade's commission.  (Schwartz Decl. ¶ 4).

Trindade then sent a second set of requests seeking three categories of documents for Mr. Trindade's commission calculation.  (Schwartz Decl. Ex. C

3

("Second Document Requests")). Grove responded by providing additional detail from its accounting system categorizing the expense deductions in Trindade's commission calculation, and provided interrogatory responses explaining the major deductions from Net Profit for Trindade's 2015 commission calculation. (Schwartz Decl. ¶ 6).

After Trindade filed a motion to compel further documents, the Court ordered Grove to provide "source documents" relating to four specifically identified customers and Grove's calculation of the corporate overhead, loss reserve, and cost of capital deductions used in Trindade's commission calculation. [Docket No. 41]. Grove worked diligently to provide information to satisfy Trindade's request for "source documents," had meet and confer calls with Trindade's counsel regarding the scope of Grove's production, and ultimately produced nearly 800 pages of additional documents, including expense ledgers and the underlying credit card and bank statements from which the data in the expense ledgers was obtained. (Schwartz Decl. ¶¶ 7-8).

On August 20, 2020, Trindade took the deposition of Victor Spivak, Grove's president and corporate witness on the Grove business issues identified in the Rule 30(b)(6) notice. (Schwartz Decl. ¶ 13). A second Grove Rule 30(b)(6) witness, Jason Gordon, will appear on September 22, 2020 to address the accounting issues identified in the Rule 30(b)(6) notice, who will be prepared to testify as to the calculation of Trindade's commission for 2015, the preparation of the expense ledgers, and numerous other issues that appear to be the basis of this Second Motion to Compel. (Schwartz Decl. ¶ 13).

Nevertheless, without completing the depositions of Grove's Rule 30(b)(6) witnesses, on August 31, 2020, Trindade filed his Second Motion To Compel in which he seemingly seeks compelled production of every document in Grove's files for 2015, some of which have never been requested through Trindade's document requests.

## **Argument**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As set forth below, the burden and expense of the additional discovery sought in Trindade's Second Motion to Compel greatly outweighs the likely benefit, especially given Grove's offers to provide additional information specifically identified by Trindade, and the motion should be denied.

I.   TRINDADE IS NOT ENTITLED TO ADDITIONAL DOCUMENTS

The only issue subject to document discovery in this case is the calculation of Trindade's commission for 2015. (Electronic Order [Docket No. 41] (granting motion to amend complaint "with the caveat that no additional written discovery will be permitted as it relates to the motion to amend.")). As set forth above, this commission is calculated as 15% of Net Profits exceeding $150,000. (Agreement § 4(d)(i)). Net Profits are calculated by taking Trindade's gross sales for a year, and making the

5

following deductions:

- the actual costs of goods sold attributable to his sales orders;
- all transportation and freight charges relating to the transportation of product and all storage charges, demurrage charges, insurance and other costs and expenses directly relating to such sales orders;
- a proportionate amount of the salary, bonus, benefits and other compensation paid to or on behalf of employees and consultants, including you, working out of or for the Company's Atlanta office;
- a proportionate amount of the overhead, costs and expenses of the Company's Atlanta office and a proportionate amount of the overhead, costs and expenses of the Company reasonably apportioned to the Company's Atlanta office;
- a proportionate amount of all interest expenses (internal or external) calculated as a function of the working capital needs of the Company's Atlanta office;
- a proportionate amount of a fifteen percent (15%) return on the capital investment of the Company in its Atlanta office.

(Agreement § 4(d)(ii)).

In his Second Motion to Compel, without complying with Local Rule 37.1(b)(4) requiring the reproduction of particular requests and responses, Trindade seeks four broad categories of documents: (1) all receipts and invoices for Grove's over 9,000 overhead expenses in 2015 as reflected in the expense ledgers already produced; (2) 2015 W2 information for Grove's employees; (3) information on Grove's gross profits for 2015; and (4) information on Grove's cost of capital for 2015. As set forth fully below, the Court should deny Trindade's Second Motion To Compel because these additional requests are not proportional to any probative benefit. Grove reasonably offered to produce additional materials upon identification by counsel – who flatly refused – to produce additional wage information under attorneys eyes only restrictions – also flatly refused – and Grove will supplement its production of cost of capital documents and legal expenses for 2015. Moreover, Trindade never requested documents relating to

6

Grove's gross profits and may not do so for the first time on a motion to compel.

      A.    <u>Trindade Is Not Entitled To Additional Overhead Documents</u>

In the Second Motion to Compel, Trindade seeks every invoice or receipt for every Grove expense in 2015. (Second Motion to Compel at 4-6). In response to the Court's order to provide the requested "source documents" for 2015, Grove produced ledgers for 2015 itemizing all expenses included in the overhead calculation, copies of all of Grove's credit card bills and bank statements for 2015 (which were entered into Grove's accounting system used to track and pay all of Grove's expenses, and therefore are the source documents for Grove's overhead expense), invoices for its accounting and IT services, and its lease agreements for its office space. (Schwartz Decl. ¶ 7).[1] Grove also offered to meet and confer over any additional individual invoices or receipts identified on the expense ledgers that Trindade might reasonably request. (Schwartz Decl. ¶ 8). Trindade rejected this offer and instead demanded copies of every invoice and/or receipt for each of Grove's over 9,000 overhead expenses for 2015. (Schwartz Decl. ¶ 8). There is no proportional benefit for this extraordinary burden on Grove.

Indeed, even without the benefit of testimony from Grove's Rule 30(b)(6) accounting witnesses, it appears that Trindade is able to identify overhead expenses that he believes were improperly included in the overhead calculation. (<u>See</u> Motion at 4-5). Nothing in the Second Motion to Compel provides an explanation as to what additional information Trindade expects to glean from the actual invoices or receipts that

---

[1]    Trindade specifically requested all of Grove's legal invoices for 2015. While Grove initially withheld these invoices on privilege grounds, Grove will produce the cover page of each invoice that reflects the matter on which work was performed and the total amount due on each invoice. (Schwartz Decl. ¶ 9).

may be in Grove's files that is not evident from the documents Grove produced. For example, Trindade points to items from "Bed Bath & Beyond" in the gifts category, but provides no explanation on how an underlying receipt or invoice will provide any information relevant to the question of whether this expense was properly included in the overhead. (See Motion at 4). Grove should not be required to go through the burdensome exercise of locating and producing over 9,000 invoices or receipts that would contain information duplicative of what has already been produced, especially since Grove offered to look for and produce any particular invoice or receipt that Trindade thinks may be necessary to verify specific overhead expenses, and the Second Motion to Compel on additional overhead documentation should be denied.[2]

      B.      Grove Already Produced Salary Information And Will Produce More Detail Under Appropriate Protections

In the Second Motion To Compel, Trindade argues that Grove did not provide "detailed salary information" and requests W2 information for all of Grove's employees for 2015. (Motion at 6-7). Grove produced all payroll invoices for salaries, a redacted spreadsheet containing the total salary expense and Trindade's personal salary expense, that Grove paid in 2015, and offered to provide an unredacted copy of that document subject to attorneys' eyes only protection. (Schwartz Decl. ¶ 10). Although the information is cumulative to that spreadsheet, Grove will also produce W2s for 2015, redacting street addresses and social security numbers, subject to attorneys' only protection. (Schwartz Decl. ¶ 10). However, Trindade has flatly rejected any request

---

[2] Grove anticipates that a number of the issues relating to Grove's corporate overhead calculation that are identified in the Second Motion to Compel will be resolved during the continuation of Trindade's deposition of Grove's Rule 30(b)(6) witness, scheduled to take place on September 22, 2020, and Grove respectfully requests the right to supplement its opposition with transcripts of that deposition.

for attorneys' eyes only protection. (Schwartz Decl. ¶ 11).[3]

C. <u>Grove Will Produce Documents Relating To Its Cost Of Capital</u>

In the Second Motion to Compel, Trindade seeks documents underlying the calculation of Grove's cost of capital that was performed by Grove's auditors and contained in Grove's audited financial statement that has already been produced. (Second Motion to Compel at 8-9). Since the time that Trindade filed his Second Motion to Compel, Grove has identified additional documents, including its monthly profit and loss statements and its monthly balance sheets that contain information underlying its cost of capital calculation, and has produced these documents on September 14, 2020. (Schwartz Decl. ¶ 12). Trindade will have the opportunity to explore this calculation and the significance of these documents with Grove's accountant at Grove's Rule 30(b)(6) deposition on September 22, 2020 and this Court should deny this portion of the Second Motion to Compel.

D. <u>Trindade Never Requested Gross Profit Documents</u>

In the Second Motion to Compel, Trindade seeks "source documentation concerning the total gross profit of Grove in 2015" on the grounds that a portion of Grove's total gross profit was allocated to Trindade in his commission calculation. (Motion at 7-8). However, Trindade never requested such documents in either of his document requests. Indeed, in violation of Local Rule 37.1(b)(4), Trindade's Second Motion to Compel fails to set forth the specific document requests under which he seeks

---

[3] Grove requested attorneys' eyes only protection for individually identifiable wage and salary information as it seeks to protect its employees' confidential information to the fullest extent possible and because Trindade currently works for a Grove competitor. (Schwartz Decl. ¶ 10). Trindade's response, made for the first time in the Second Motion to Compel, that attorneys' eyes only protection would prevent use of the salary information in deposition and require submission under seal, makes no sense given such protection typically allows for use at deposition, especially when the witness is Grove's accountant, and for submission to court, and Grove has never refused such accommodations. (Schwartz Decl. ¶ 11).

to compel production.  (See Motion at 7-8).

In his First Document Requests, Trindade requested invoices for certain customers and "All any all documents used to calculate the Plaintiff Commission Compensation." (First Document Requests Nos. 15-17).  Grove produced the spreadsheet it used to calculate Trindade's entitlement to a commission in 2015, which included Grove's calculation of gross profit for 2015.  (Schwartz Decl. ¶ 4).  As such, Trindade is not entitled to source documentation on Grove's gross profits for 2015 under this request.  In his Second Document Requests, Trindade requested source documents for Grove's corporate overhead, loss reserve, and cost of capital deductions, but did not ask for source documents on Grove's gross profits.  (See Second Document Requests Nos. 2-4).  Trindade may not move to compel documents that he never requested and his motion to compel undefined "source documents" on Grove's gross should be denied.  Yourga v. Northampton, No. 16-30167-MGM, 2018 WL 4268894, at *1 (D. Mass. Sept. 6, 2018) ("Because Plaintiff never served a document production request on the defendants requesting the documents whose production he now seeks to compel, the court cannot enter an order compelling their production.").

II.     SANCTIONS ARE INAPPROPRIATE

Discovery sanctions are only appropriate when a failure to produce documents is not substantially justified or when a party disobeys a court order on discovery.  See Fed. R. Civ. P. 37(a)(5)(A)(ii) & 37(b).  A party who fails to attempt in good faith to resolve a discovery dispute before bringing a motion to compel is not entitled to sanctions.  Fed. R. Civ. P. 37(a)(5)(A)(i).  Nevertheless, after refusing reasonable requests to identify particular additional documents that might be probative or enter into an attorneys' eyes

10

only protection for sensitive wage information, Trindade seeks sanctions for Grove's purported failure to produce documents. (Second Motion to Compel at 9-10). Sanctions are inappropriate in this case.

Indeed, as set forth above, following this Court's Order on July 23, 2020, Grove produced itemized ledgers for all overhead expenses in the commission calculation spreadsheet and also produced copies of the credit card bills and bank statements that were the source of most of those expense items. (Schwartz Decl. ¶ 7). Grove also produced invoices for payroll, information technology, and accounting services, will provide invoices for its 2015 legal bills, albeit not the time detail that contains attorney-client privileged information, and will produce more salary expense detail, including redacted W2 documents, under appropriate attorneys' eyes only protection. (Schwartz Decl. ¶¶ 7-12) Grove should not be sanctioned for failing to produce additional gross profit documentation that were never sought in Trindade's two document requests.

This is not a case in which Grove has sought to "turn discovery into a shell game" as Trindade claims. (Second Motion to Compel at 9-10). Rather, Grove has produced voluminous source materials upon which Grove calculated Trindade's entitlement to commission for 2015 while seeking to minimize the burden of a more extensive production through repeated meet and confer efforts, which Trindade has rejected time and again. Indeed, as demonstrated in this Second Motion to Compel filed even before Trindade completed the Rule 30(b)(6) deposition of Grove's accounting witness, Trindade seeks to maximize the discovery burden on Grove, yet has refused to cooperate with Grove to identify particular additional materials necessary for this case.

## Conclusion

Accordingly, Grove respectfully requests that this Court deny Trindade's Second Motion to Compel.

Dated: September 14, 2020

Respectfully Submitted,

Grove Services, Inc. and Victor Spivak

By their attorneys,

 /s/ Irwin B. Schwartz
Irwin B. Schwartz (BBO# 548763)
ischwartz@blaschwartz.com
Nicholas R. Cassie (BBO# 672698)
ncassie@blaschwartz.com
BLA Schwartz, PC
One University Ave., Suite 302B
Westwood, Massachusetts 02090
Phone:  781-636-5000
Fax:     781-636-5090

## Certificate of Service

I, Irwin B. Schwartz, as attorney for defendants Grove Services, Inc. and Victor Spivak, hereby certify that on this 14th day of September 2020, I filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.
.

/s/ Irwin B. Schwartz
Irwin B. Schwartz