UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAULO TRINDADE,<br><br>Plaintiff,<br><br>v.<br><br>GROVE SERVICES, INC. and VICTOR SPIVAK,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 19-cv-10717-ADB |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff Paulo Trindade ("Plaintiff") brings this action against his former employer Grove Services, Inc. ("Grove") and its President and Treasurer, Victor Spivak ("Spivak," and with Grove, "Defendants"), alleging breach of contract and violations of the Massachusetts Wage Act (the "MWA"), Mass. Gen. Laws ch. 149, §§ 148–50, in connection with commissions due to him under his employment contract. [ECF No. 42 ("Am. Compl.")]. Currently before the Court is Defendants' motion for partial summary judgment on Plaintiff's claims arising from his 2013, 2014, and 2016 commission payments. [ECF Nos. 91]. For the reasons set forth below, Defendants' motion is DENIED.[1]

[1] Pursuant to Federal Rule of Civil Procedure 56(d), Plaintiff requests that the Court compel Defendants "to produce documents concerning corporate overhead for 2013, 2014, and 2016 (including salaries of the employees) and the net metric tons and gross profit for each salesperson." [ECF No. 95 at 5]. In light of the Court's ruling on Defendants' motion for summary judgment, this request is DENIED as moot.

# I. BACKGROUND

## A. Factual Background

Unless otherwise noted, the following facts are undisputed.[2]

On or around September 24, 2010, Plaintiff contracted with Grove to serve as its Sales Director for Latin America (the "Agreement"). [ECF No. 96 ¶ 1]. Under the Agreement, Plaintiff was to receive a $130,000 base salary, a discretionary bonus, and an annual commission equal to 15% of his "Net Profits." [Id. ¶ 2; ECF No. 94-1 at 3]. Plaintiff's "Net Profits" were calculated by totaling his gross sales and then deducting certain costs and expenses from that amount, including a "proportionate amount of the overhead, costs and expenses of the Company's Atlanta Office and a proportionate amount of the overhead, costs and expenses of the Company reasonably apportioned to the Company's Atlanta Office . . . ." [ECF No. 94-1 at 3]. The Agreement also provided that "[n]o amendment or alteration of the terms of [the Agreement] shall be valid unless made in a writing signed by each of the parties. . . ." [Id. at 8].

In 2013, Plaintiff received his base salary, a $50,000 discretionary bonus, and $48,511.37 in commission. [ECF No. 96 ¶ 3]. In 2014, Plaintiff received his base salary, a $47,500 discretionary bonus, and $47,647.46 in commission. [Id. ¶ 4]. He did not object to his 2013 and 2014 commissions when they were paid. [Id. ¶¶ 3–4]. In 2016, Plaintiff received his base salary and a commission. [Id. ¶ 5]. The parties dispute the amount of his commission, with Defendants asserting that it was $146,000 and Plaintiff claiming that it was only $139,779. [Id.].

[2] The Court draws the facts from Plaintiff's response to Defendants' statement of material undisputed facts and additional undisputed facts, [ECF No. 96], as well as Defendants' response to Plaintiff's statement of additional undisputed facts, [ECF No. 98], which contain the parties' contentions regarding the facts set forth in support of Defendants' motion for partial summary judgment, and the documents referenced therein.

Plaintiff does not know if he objected to his 2016 commission payment when it was paid, but Defendants say that he did not. [ECF No. 96-4 ("Plf. Dep.") at 104; ECF No. 96 ¶ 5].

During his deposition, Plaintiff was questioned about his 2013, 2014, and 2016 commissions. See generally [Plf. Dep.]. When asked how much more commission[3] he should have received in 2013, Plaintiff testified that he did not have access to Grove's expense details for 2013 and could not speculate on the underpayment amounts without that information. [Id. at 101]. He testified similarly regarding his 2014 commission. [Id. at 103 ("I cannot make that statement without going through the detailed expenses of 2014.")]. Finally, when asked how much more he thought he should have been paid in 2016, Plaintiff said "[w]e have retained a specialist to review all of this and other costs and proper allocation so we can calculate that number," but that he did "not have an exact value." [Id. at 152]. Later in his deposition, Plaintiff clarified that his 2014 and 2016 commissions were improperly reduced by the amount that Grove contributed to his retirement account, and that he was owed at least several thousand dollars as a result. [Id. at 163–64].

**B. Procedural Background**

Plaintiff filed his amended complaint on July 24, 2020, which alleges that Grove underpaid his commissions from 2013 to 2016. [Am. Compl.]. Defendants filed a motion to dismiss on August 7, 2020, [ECF No. 46], which the Court granted in part and denied in part,

[3] The parties and documents alternate between "commission," "gross bonus," "total bonus," and/or "bonus" when discussing Plaintiff's claims. For example, in the portion of his deposition referenced above, Plaintiff was technically asked about his gross bonus. Based on the record, the Court understands "bonus," "total bonus," and "gross bonus" to refer to the sum of Plaintiff's annual commission and his discretionary bonus. The parties' briefing suggests that these terms can be used interchangeably and that the analysis of the issues does not turn on the precise terminology used. To eliminate any confusion, however, the Court will only use the term "commission."

[ECF No. 89]. Pursuant to the Court's dismissal order, the remaining claims are: (1) violations of the MWA against both defendants (Count I), [Am. Compl. ¶¶ 17–26], and (2) breach of contract against Grove only (Count II), [id. ¶¶ 27–31]. Plaintiff's breach of contract claim challenges the commissions paid in 2013, 2014, 2015, and 2016, while his MWA claim seeks damages only for underpaid commissions in 2015 and 2016. [Id. ¶¶ 21–22, 30].

On December 9, 2020, Defendants moved for partial summary judgment on Plaintiff's claims arising from the 2013, 2014, and 2016 underpayments.[4] [ECF No. 91]. Plaintiff opposed on December 30, 2020, [ECF No. 95], and Defendants filed a reply on January 13, 2021, [ECF No. 97].

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States

[4] Defendants do not move for summary judgment on any claims relating to the 2015 commission payment.

v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted). That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III. DISCUSSION

Defendants argue that summary judgment is warranted because Plaintiff has not put forth any evidence that demonstrates that his commissions were underpaid in 2013, 2014, or 2016. [ECF No. 92 at 4–5].

### A. Breach of Contract Claim Against Grove

Plaintiff alleges that Grove breached the Agreement by underpaying his commissions in 2013, 2014, and 2016. In Massachusetts, "[t]o prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016) (citing Singarella v. Boston, 173 N.E.2d 290, 291 (Mass. 1961)). Accordingly, Plaintiff cannot succeed on this claim if he is unable to prove that he has been damaged by Grove's breach. Haven Real Est. Grp., LLC v. Bell Atl. Mobile of Massachusetts Corp., Ltd., 236 F. Supp. 3d 454, 464 (D. Mass. 2017) (granting summary judgment on breach of contract claim when there was no evidence that plaintiff suffered any damages).

Grove argues that there is no genuine issue of material fact on the damages issue because (1) Spivak testified in his deposition that he believed Plaintiff was paid what he was owed in 2013, 2014, and 2016; (2) Plaintiff was unable to testify to the exact amount of commission he should have been paid in 2013, 2014, or 2016, including whether he should have been paid more than what he received; and (3) Grove's decision to make payments to Plaintiff's retirement account is not material where Plaintiff had immediate access to those funds. [ECF No. 92 at 6–7, 9–10]. Plaintiff counters that the record clearly shows that he was underpaid in 2013, 2014, and

2016 because (1) Grove impermissibly reduced his annual commission payment by the amount it contributed to his retirement account; and (2) he did not have unfettered access to money deposited into his retirement account because he would incur an early withdrawal penalty if he withdrew funds from the account before reaching a certain age. [ECF No. 95 at 2–3]. Plaintiff also argues that a document produced in discovery shows that the overhead expenses deducted from his 2014 commission were overstated and led to an additional underpayment for that year. [Id. at 3–4].

First, there are triable issues of material fact regarding Grove's payments to Plaintiff's retirement account. It is undisputed that Plaintiff did not receive his entire 2014 and 2016 commissions in a paycheck.[5] Grove contends that it split Plaintiff's commission between his paycheck and his retirement account, implying that Plaintiff received his full commission amount but in two different forms. [ECF No. 92 at 10]. Plaintiff argues that Grove deducted the amount it contributed to his retirement account from his annual commission, which resulted in him receiving less money than he should have even when the two amounts are added together. [ECF No. 95 at 2–3]. In other words, although the briefing is somewhat confusing, as the Court understands it, Plaintiff believes that Grove impermissibly credited its unrelated contribution to his retirement account towards his annual commission payment. [Id.].

There is support in the record for Plaintiff's position, including the deposition of Grove's corporate representative, Jason Gordon, whose testimony suggests that Grove "reduced" Plaintiff's commission by the amount it contributed to Plaintiff's retirement account. [ECF No. 96-2 at 39–40]. Ultimately, the record before the Court does not explain the terms of Grove's

[5] Grove's argument regarding the form of the 2013 commission payment is addressed below.

"employer contribution," including under what circumstances Grove contributed to its employees' retirement accounts and whether Plaintiff was entitled to an employer contribution in addition to his annual commission payment. Further, to the extent Grove argues that a deduction based on its retirement contributions was not a breach of contract, Grove has not pointed the Court to language in the Agreement that permits Plaintiff's annual commission to be reduced in this way, and the Agreement requires any changes to its terms to be made in writing and signed by both parties. Therefore, the Court cannot conclude that Plaintiff was paid the full commission amount he was due under the Agreement.

Even if the Court accepted Grove's characterization of its payment methods, summary judgment would still not be warranted. Although Grove argues that certain statutes and regulations allow funds in a retirement account to be withdrawn immediately and without a penalty, [ECF No. 97 at 4–5], generally speaking, early withdrawals from retirement accounts are discouraged and are subject to early withdrawal penalties. See 26 U.S.C. § 72(t). Plaintiff argues that he would be subject to such a penalty, [ECF No. 95 at 3], and Grove has not demonstrated that any of the statutes and regulations it identifies apply to Plaintiff and would allow him to avoid a penalty.

Grove also argues that it is entitled to summary judgment on the 2013 claims, even assuming the payments made to Plaintiff's retirement account were improper, because it did not pay any portion of Plaintiff's 2013 commission to his retirement account. [ECF No. 97 at 3–4]. Grove asserts that this is apparent because Plaintiff's calculation sheets for 2014 and 2016 have specific notes showing that the total commission paid to his paycheck was reduced by the retirement contribution amount, but that the 2013 calculation sheet does not have a specific note about a retirement contribution. Compare [ECF No. 94-6 (2014 commission calculation sheet

stating "reduce GROSS by employer retirement contribution" by the amount of $7,041.00)] and [ECF No. 94-7 (2016 commission calculation sheet stating "Less: 401lk contribution paid" by the amount of $6,759)], with [ECF No. 94-5 (2013 commission calculation sheet that contains no line item regarding payment to a retirement account)]. According to Grove, Plaintiff's only support regarding his 2013 commission claim is Mr. Gordon's testimony that he could not recall if the 2013 commission was paid into a retirement account. [ECF No. 97 at 3]. Grove overstates Mr. Gordon's testimony. In his Federal Rule of Civil Procedure 30(b)(6) deposition, Mr. Gordon was twice asked if Grove reduced Plaintiff's commission by the company's retirement contribution amount in 2013. He first testified that "I think we did, but I don't remember. I'd have to look at it because I think we did," [ECF No. 96-2 at 39], and, when asked the second time, he answered "I believe so," [id. at 40]. Drawing all inferences in the non-moving party's favor, Mr. Gordon's testimony about the 2013 commission creates a disputed issue of material fact that precludes summary judgment.

Plaintiff next argues there is also a disputed issue of material fact concerning the amount of corporate overhead expenses that should have been attributed to Plaintiff in 2014. [ECF No. 95 at 3–4]. Plaintiff's 2014 commission calculation sheet demonstrates that the amount of corporate overhead expenses attributed to him in 2014 was $741,494. [ECF No. 94-6 at 2]. After viewing a company document during his deposition,[6] Mr. Gordon was unsure if total corporate overhead expenses for 2014 were $6,204,105 or $9,140,232. [ECF No. 96-2 at 29–30]. If the proper total corporate overhead amount was $6,204,105, then the amount attributable

[6] This document is not before the Court, but was produced in discovery and appears to have been an exhibit in Mr. Gordon's deposition.

to Plaintiff should have been $516,801.95 rather than $741,494.[7] A reasonable jury could find that Grove used the incorrect corporate overhead amount in its 2014 calculations, that the amount of overhead expenses attributed to Plaintiff was overstated, and that Plaintiff's 2014 total commission was therefore too low.

Accordingly, Grove is not entitled to summary judgment on Plaintiff's breach of contract claim.

**B. MWA Claim Against Defendants**

Similar to his breach of contract argument, Plaintiff claims that his 2016 commission payment violated the MWA because his 2016 commission was improperly reduced by the amount paid to his retirement account.[8] To state a claim under the MWA, a plaintiff "must prove (1) he was an employee under the statute; (2) his deferred compensation constitutes a 'wage' under the statute; [and] (3) the defendants violated the Act by not paying him his wages in a timely manner." Roma v. Raito, Inc., No. 13-cv-10297, 2015 WL 1523098, at *6 (D. Mass. Mar. 31, 2015) (alteration in original) (quoting Doucot v. IDS Scheer, Inc., 734 F. Supp. 2d 172, 192 (D. Mass. 2010)).

The same disputes of fact that prelude summary judgment on the breach of contract claim preclude summary judgment on the MWA claim. Based on the record before it, the Court cannot conclude that Plaintiff was timely paid his commission where a reasonable jury could find that

[7] Mr. Gordon agreed that Plaintiff's portion of corporate overhead expenses in 2014 was 8.33% of the total overhead, and 8.33% of $6,204,105 is $516,801.95. See [ECF No. 96-2 at 29].

[8] Plaintiff also argues that he is still owed $49,750.80 for his 2016 commission based on his estimation of his overhead expenses in 2016. [ECF No. 95 at 4]. Mr. Gordon testified that Grove used a new formula in 2016 that did not factor in corporate overhead expenses. [ECF No. 96-2 at 40]. It is unclear if Plaintiff's argument regarding his 2016 overhead expenses is a challenge to Defendants' new formula. Regardless, because the Court denies Defendants' motion for partial summary judgment on other grounds, the Court does not address this argument.

(1) Grove improperly reduced Plaintiff's commission by the amount of its contribution to his retirement account and/or (2) the portion paid to Plaintiff's retirement account was not immediately available to him because it may have been subject to an early withdrawal penalty.

Accordingly, Defendants are not entitled to summary judgment on Plaintiff's MWA claim.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for partial summary judgment, [ECF No. 91], is DENIED.

**SO ORDERED.**

September 16, 2021

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE